In the Matter of ANNABELLE STABER, Respondent, v LEWIS A. FIDLER, Appellant, et al., Respondents. (And Other Titles.)

Second Department, August 21, 1985

**OPINION OF THE COURT**

Per Curiam.

Each of these three matters presents the issue of whether miniscule inaccuracies in the numerical statement contained in the cover sheet of a designating petition automatically requires the invalidation of the petition. The objectors on these appeals rely principally on the case of *Matter of Hargett v Jefferson* (63 NY2d 696), decided last year, in which the respective cover

sheets stated that the designating petitions contained 5,074 and 3,325 signatures, respectively, while the actual numbers were 3,831 and 2,083, respectively, resulting in overstatements of 1,243 and 1,242 signatures, or deviations of 32.45 and 59.63%. In a brief memorandum decision in that case, the Court of Appeals declared the designating petitions invalid because the cover sheet requirements of Election Law § 6-134 (2) were not "strictly complied with" (*Matter of Hargett v Jefferson, supra,* at p 698). Seizing upon the words "strictly complied with", this year numerous objectors seek to invalidate designating petitions in which the most minor inadvertances have resulted in miniscule overstatements or understatements of the number of signatures stated on the cover sheets of the designating petitions. Thus, in the instant matters, the designating petition of Lewis A. Fidler contains either 4,659 or 4,660 signatures, but the cover sheet lists 4,669 signatures, an overstatement of 9 or 10 signatures representing twenty-one one-hundredths of one per cent (.0021); the designating petition of Nydia M. Velazquez contains 2,420 signatures (after Special Term noted that four signatures were invalid), while the cover sheet lists 2,424 signatures, an overstatement of four signatures representing seventeen one-hundredths of one per cent (.0017); and the designating petition of Susan D. Alter contains 4,643 signatures, while the cover sheet lists 4,640 signatures, an understatement of three signatures representing six one-hundredths of one per cent (.0006).

We believe that the determination in *Matter of Hargett v Jefferson* (*supra*) has been misconstrued by those who rely upon it to attack designating petitions where the overstatement or understatement of the numbers of signatures is extremely minor. Nothing in *Hargett* indicates to us that the long-standing doctrine of *de minimis non curat lex* has no application to the technical requirements of the Election Law. Under the de minimis doctrine "the law does not concern itself with trifles" (*see,* 1 Am Jur 2d, Actions, § 67); "[t]he law does not care for, or take notice of, very small or trifling matters" (Black's Law Dictionary 388 [5th ed]).

When dealing with the technical requirements of a designating petition — the intention of the Legislature obviously being the avoidance of fraud, abuse or irregularities — an error so insignificant in proportion as to be totally inconsequential should not be the basis for the elimination of the right to vie for public office. We cannot agree that the phrase "strict compliance", when used by the Court of Appeals as it relates to the technical provisions relating to cover sheets of designating petitions, mandates that the slightest deviation from 100% accuracy

will result in the disenfranchisement of large numbers of voters and the destruction of candidacies. Such a reading constitutes a distortion of what the Court of Appeals declared in *Hargett* (*supra*) — a distortion which will create great mischief to and wreak havoc upon the electoral system in this State.

To construe *Hargett* (*supra*) as the instant objectors do would mean that the higher office and thus the more signatures required by statute, the greater the likelihood that some inconsequential and insignificant error will assume monumental proportions. The prospective candidate becomes more vulnerable to this kind of attack as the numbers of signatures in his or her designating petition swell. This is so because of the obvious fact that the potential for purely arithmetical error of which we speak increases as the number of signatures increases. Thus, the prospective candidate who gathers a large number of valid signatures, and should therefore be on the ballot, is exposed to having his or her designating petition rejected by the courts by virtue of a purely innocent and insignificant human error which has no relationship to the objectives sought to be attained by the Election Law. Furthermore, the objectors' construction of *Hargett* places the fate of every candidacy in the hands of subscribing witnesses, particularly with respect to the manner in which a witness totals the number of signatures on each sheet. Thus, for example, in the Velazquez matter, subscribing witnesses of several sheets counted signatures through which a line was drawn or which were obliterated. Under the construction of *Hargett* proffered by the objectors, the judgment of the subscribing witnesses to count these signatures may be fatal to a candidacy, for if such signatures are subsequently ruled not to be signatures, as in the Velazquez matter, the total number of signatures stated on the cover sheet will be incorrect.

Moreover, the person doing the addition for the cover sheet is placed in the position of accepting or rejecting for arithmetical purposes a subscribing witness statement that the signature was, indeed, a correct signature. Again, according to the objectors' reading of *Hargett* (*supra*), an error in judgment by the person adding the totals for the cover sheet as to even one signature could disenfranchise all the supporters of a candidate for Governor, Senator, or the many other offices upon which our government rests.

It is apparent, therefore, that strict compliance with the technical requirements of Election Law § 6-134 (2) does not preclude application of the de minimis doctrine. In our view, the Court of Appeals did not intend to preclude application of that doctrine in matters such as those before us.

With this in mind, we now proceed to a further analysis of the matters before us.

### MATTER OF STABER V FIDLER

Lewis A. Fidler filed a designating petition containing either 4,659 or 4,660 signatures for the Democratic nomination for the public office of Member of the City Council from the 25th Councilmanic District in Brooklyn. However, the cover sheets of the petition indicated that the total number of signatures in the petition was 4,669. Thus, there is an overstatement of either 9 or 10 signatures on the cover sheets, a percentage deviation of, at most, twenty-one hundreths of one per cent (.0021). It is undisputed that differences between the number of signatures attested to by the subscribing witnesses of several designating petition sheets and the actual number of signatures on those sheets caused the overstatement on the cover sheets. It is further undisputed that Fidler otherwise has a sufficient number of valid signatures,[*] that the total number of signatures after adding up the numbers contained in each subscribing witness statement on each designating petition sheet equals the number of signatures listed on the cover sheet, and that there is no fraud whatsoever involved in these proceedings. Special Term, although acknowledging that the difference was of a de minimis nature, and expressing deep dissatisfaction with the *Hargett* rule, found that Fidler had not strictly complied with Election Law § 6-134 and invalidated his designating petition.

### MATTER OF VELAZQUEZ V PARRILLA

Nydia M. Velazquez filed a designating petition with the Board of Elections which was ultimately determined to contain 2,424 signatures for the Democratic nomination for the public office of Member of the City Council from the 27th Councilmanic District in Brooklyn. While the cover sheets accurately showed the total number of signatures in the petition, Special Term found that the subscribing witnesses improperly counted four signatures on several sheets as valid signatures. These signatures consisted of three crossed out signatures and one duplicate signature. Special Term denied Velazquez' application to allow the subscribing witnesses to testify as to their intent in counting these signatures. Consequently, the court found an overstatement of four signatures on the cover sheets, a percentage deviation of seventeen one-hundreths of one per cent (.0017). Again, it is undisputed that the overstatement was caused by a difference between the number of signatures attested to on several petition

---

[*] It is undisputed that 1,500 valid signatures are required to be placed on the ballot as a candidate for Member of the New York City Council.

sheets by certain subscribing witnesses and the actual number of signatures on those sheets. It is also undisputed that Velazquez otherwise has a sufficient number of valid signatures, that the totals of the subscribing witness statements equal the number of signatures on the cover sheets, and that there is no fraud in these proceedings. However, Special Term, again stating that it was constrained by *Hargett* (*supra*), invalidated the designating petition of Velazquez for failure to strictly comply with Election Law § 6-134.

### MATTER OF GARRETT v ALTER

Dora M. Garrett seeks to invalidate the designating petition of Susan D. Alter for the Democratic nomination for the office of Member of the City Council for the 25th Councilmanic District in Brooklyn. Alter filed a designating petition containing 4,643 signatures. The cover sheets, however, indicated that the total number of signatures contained in the petition was 4,640. Thus, there is an understatement of three signatures on the cover sheets, a percentage deviation of six one-hundredths of one per cent (.0006). Again, the difference is blamed on inaccurate subscribing witness statements which were relied upon in determining the total number of signatures in the designating petition. Alter otherwise has more than a sufficient number of valid signatures; the signature total when the subscribing witness statements are added is the same as the number of signatures listed on the cover sheets, and there are no allegations of fraud. In this matter, Special Term, relying on *Matter of Jonas v Black* (104 AD2d 466, *affd* 63 NY2d 685), held that the strict compliance rule of *Hargett* (*supra*) did not apply to cover sheets which *understated* the total number of signatures contained in a designating petition, and consequently validated Alter's petition.

All of these appeals involve situations where the candidates in question otherwise have far in excess of the required number of signatures to appear on the ballot. The overstatements or understatements in the signature totals listed on the cover sheets do not exceed 10, and the maximum percentage deviation is twenty-one one-hundredths of one per cent (.0021). The strict compliance standard, rigid as it is, is not entirely inflexible, but is to be applied with the intent of the statute in mind, with common sense and with deference to the rule of reason, or, as the Court of Appeals has previously stated, "within all reasonable limits" (*Schneider v City of Rochester,* 160 NY 165, 172). In the instant matters, where the overstatements or understatements in the total in the number of signatures reported on the cover sheets are of a de minimis nature, we believe that the strict compliance standard, as set forth in *Matter of Hargett v Jefferson*

(*supra*) and other Court of Appeals cases (*see, e.g., Matter of Smith v Mahoney,* 60 NY2d 596; *Matter of Engert v McNab,* 60 NY2d 607; *Matter of Hutson v Bass,* 54 NY2d 772; *Matter of Ruiz v Sachs,* 43 NY2d 894), was satisfied.

In sum, Special Term incorrectly invalidated the designating petitions of Lewis Fidler and Nydia Velazquez and correctly validated the designating petition of Susan Alter. In light of our determination, we need not reach the constitutional issues raised or any other issue. Accordingly, the Board of Elections should be directed to place Fidler's and Velazquez' names on the appropriate ballots.

LAZER, J. P., BRACKEN, NIEHOFF and EIBER, JJ., concur.

Judgment of the Supreme Court, Kings County, dated August 12, 1985, modified, on the law and the facts, by (1) deleting the provision granting the application to invalidate the petition designating Lewis A. Fidler as a candidate in the Democratic Party primary election to be held on September 10, 1985 for the public office of Councilmember, 25th Councilmanic District, Kings County, and substituting provisions denying said application to invalidate and directing the Board of Elections to place Fidler's name on the appropriate ballot, and (2) deleting the provisions (a) denying the application to validate the petition designating Nydia M. Velazquez as a candidate in the Democratic Party primary election to be held on September 10, 1985 for the public office of Councilmember, 27th Councilmanic District, Kings County, and (b) granting the application to invalidate said petition, and substituting therefor provisions granting the application to validate, denying the application to invalidate and directing the Board of Elections to place Velazquez' name on the appropriate ballot. As so modified, judgment affirmed insofar as appealed from, without costs or disbursements. (The judgment is therefore affirmed insofar as it sustained the petition designating Susan D. Alter as a candidate in the Democratic Party primary election to be held on September 10, 1985 for the public office of Councilmember, 25th Councilmanic District, Kings County.)