OPINION OF THE COURT
Anthony A. Scarping, Jr., J.
This is a special proceeding brought pursuant to article 16 of the Election Law wherein petitioners challenge respondents’ determination which invalidated their primary election petitions without providing them with an opportunity to cure the allegedly defective petitions. The respondents generally oppose the petition and claim that their determination was reasonable and in accord with applicable statutes and regulation.
The facts involved in this proceeding are not in dispute. Petitioners are qualified voters and/or incumbent elected officials of the Village and Town of Mount Kisco in the County of Westchester. The petitioners timely filed designating petitions naming them the Democratic Party candidates for the respective offices in the upcoming September 9, 1997 primary election. The petitions contained more than the requisite number of valid signatures from eligible voters. Thereafter, respondent John Francan filed a timely objection to the petitions. The sole objection is that the 11-page petition "fails to satisfy the requirements of section 6-134(2) of the Election Law in that the sheets thereof are not numbered.” (See, Mr. Francan’s letter to Board of Elections annexed to petition as exhibit B.) There is no allegation of any fraud, and respondents expressly disclaim any wrongdoing by the petitioners.
On July 17,1997, the respondent Commissioners of the Board of Elections issued a determination sustaining the objection and advising the petitioners that their names would not appear on the Democratic Party ballot in the September 9, 1997 primary election. No other petitions have been filed designating any other Democratic candidates for nomination to the offices for which petitioners have been designated, and the time to file such petitions has expired.
This action was timely commenced by filing of an order to show cause and petition on July 23, 1997. Issue was joined by filing answers, and oral argument was heard on August 1,1997. All parties agreed that no testimony or other fact-finding was necessary for the determination of the issues presented.
*789 The following issues are presented for the court’s review: (1) whether the Board of Elections properly sustained the objection to the filed petitions; (2) whether the Board of Elections properly interpreted the Election Law in determining that the three-day cure provision contained in Election Law § 6-134 (2), as recently amended by Laws of 1996 (ch 709), is not applicable to the failure to number pages of a designating petition; and (3) whether petitioners are entitled,, in the alternative, to the "exceptional” equitable remedy of an opportunity to ballot enunciated in Matter of Hunting v Power (20 NY2d 680).
The second issue involves the interpretation of recently enacted legislation which amended and liberalized petition filing requirements (see, L 1996, ch 709). This legislation, commonly referred to as the "Ballot Access Law”, became effective in December 1996. According to counsel, this issue is one of first impression in the State and, indeed, the court’s own research has not revealed any published decisions interpreting the three-day cure provisions contained in the amended statute.
THE AMENDED LAW
Section 6-134 (2) of the Election Law, as amended by the Ballot Access Law, provides as follows: "Sheets of a designating petition shall be delivered to the board of elections in the manner prescribed by regulations that shall be promulgated by the state board of elections, provided, however, that the sheets of any volume of a petition shall be numbered. Such regulations shall be no more restrictive than is reasonably necessary for the processing of such petitions by the board of elections. Such regulations shall be binding on the boards of election in each county and in the city of New York. When a determination is made that a designating petition does not comply with such regulations, the candidate shall have three business days from the date of such determination to cure the violation.”
Thereafter, the New York State Board of Elections enacted regulations in compliance with the directive contained in section 6-134 (2) of the Election Law (see, 9 NYCRR part 6215). Pursuant to section 6215.1 (a) of those regulations, the sheets of a petition must be numbered sequentially at the foot of each sheet. Thus, the requirements that sheets of a petition be numbered is contained in both the statute and in the regulations.
*790 IS THE OBJECTION VALID?
The page numbering requirement has been a long-standing feature of the law and is designed to prevent fraud (see, e.g., Matter of Sheehan v Scaringe, 121 Misc 2d 110, revd on other grounds 97 AD2d 617, revd on other grounds 60 NY2d 795). However, the failure to comply with the numbering requirement has not always been considered sufficient grounds to invalidate a petition (see, e.g., Matter of Rosen v McNab, 25 NY2d 798; Matter of Lawrence v Coveney, 39 AD2d 951; Matter of Lloyd v Power, 37 AD2d 792).
The issue as to the effect of noncompliance with the numbering provision was finally and conclusively determined in Matter of Braxton v Mahoney (63 NY2d 691). In Braxton, the Court of Appeals definitively held that the failure to bind and consecutively number a two-page petition constituted a fatal defect as to content, not merely of form. This ruling has been repeatedly followed despite the sometimes harsh consequences (see, e.g., Matter of Staber v Fidler, 110 AD2d 38, affd 65 NY2d 529; O’Connor v McGivney, 144 Misc 2d 396; Matter of Holster v Matthews, 185 AD2d 959, lv denied 80 NY2d 755).
The petitioners concede that the 11 sheets of their petition do not contain numbers on the bottom. A review of these documents clearly reflects this deficiency. Since the applicable provision of the Election Law and the regulations implementing that law both require individual numbering of pages, the Board of Elections properly sustained Mr. Francan’s objection (see, Matter of Holster v Matthews, 185 AD2d 959, lv denied 80 NY2d 755, supra).
IS THE THREE-DAY CURE PROVISION APPLICABLE?
The Ballot Access Law was enacted for the purpose of simplifying and liberalizing the petition filing requirements (see, Mem of Assembly in Support, Bill Jacket, L 1996, ch 709). It was the expressed intention of the Legislature and the Governor to make the petition process simpler and more equitable for all candidates for public office.
Upon approving the law, Governor Pataki stated (Governor’s Mem of Approval, 1996 McKinney’s Session Laws of NY, at 1939):
"The State’s election laws should not be used as a weapon by lawyers and political partisans to block legitimate candidates from securing a place on the ballot. By eliminating a myriad of technicalities that have long been used to invalidate petitions and signatures for reasons having nothing to do with whether *791 a signatory of a petition was qualified to do so, this legislation will help ensure that all our citizens have a fair opportunity to obtain access to the ballot. No longer will serious candidates be bounced from the ballot because they used a paper clip rather than a staple to fasten the sheets of their petition.
"A fundamental tenet of our nation is that we are a government of the people, by the people, for the people. By making the process of running for elective office easier and fairer, we honor that tenet and return government to the people.
"The bill is approved.”
More than any other provision in the amended law, the three-day cure period provides the potential to realize the laudable purposes and goals expressed by the Governor and the Legislature. Despite the simplified requirements and the best intentions of bleary-eyed volunteers, mistakes will be made. The three-day cure provision assures that mistakes which have "nothing to do with whether a signatory of a petition was qualified” will not be used "as a weapon” to "bounce[ ]” "serious candidates” from the ballot (Governor’s Mem of Approval, ibid.).
Against this backdrop, we turn now to a consideration of the parties’ contentions. The petitioners argue that the numbering requirement is technical in nature and does not, in the absence of any allegation of fraud, affect the validity of any voter’s signature or the eligibility of any voter whose signature appears on the petition. They further point out that the numbering requirement is contained in the regulations, and the three-day cure provision in the law expressly applies whenever the Board of Elections determines that a petition does not comply with any regulation.
The respondents contend that the three-day cure provision applies only to technical requirements imposed by the regulations. They conclude that since the numbering requirement is also contained in the statute, it is a substantive requirement the violation of which may not be cured. In support of this contention, respondents cite Matter of Braxton v Mahoney (63 NY2d 691, supra).
This court believes Braxton (supra) is distinguishable for three reasons. First, the Braxton Court was not concerned with the applicability of the three-day cure provision. That provision did not exist at the time Braxton was decided. The harsh result in Braxton, and numerous other cases was reflective of the strict, inflexible, hypertechnical statutory scheme which *792 existed at that time. Secondly, the respondents misstate the holding in Braxton. That Court did not hold that the numbering-requirement was "substantive.” Instead, the Braxton Court held that the numbering requirement was more than just a requirement of "form,” and constituted a requirement of "content.” (Supra, at 692.) Thirdly, the statute which the court is called upon to interpret today does not rely upon any distinction between violations of form versus violations of content in providing its remedy. The law simply provides that "[w]hen a determination is made that a designating petition does not comply with [the] regulations, the candidate shall have three business days from the date of such determination to cure the violation.” (Election Law § 6-134 [2].)
Since the numbering requirement is concededly found in the regulation, the plain reading of the statute mandates the application of the three-day cure provision to -permit this deficiency to be remedied. This interpretation is consistent with the statutory requirement and will result in the Board of Elections ultimately receiving properly numbered petition sheets. If, after the sheets are properly numbered, there exists some internal inconsistency or other impropriety, then appropriate action can be taken.
In addition, the respondents’ interpretation would frustrate the purpose and intent of the statute and lead to an absurd result. Again, serious candidates would be "bounced” from the ballot for reasons having "nothing to do with whether a signatory of a petition was qualified.” (Governor’s Mem of Approval, op. cit.) Such an interpretation is not
required to uphold the integrity of the process since there is no allegation of fraud, improper motive, or other impropriety. Like binding the petitions with a paper clip instead of a staple, the failure to number pages may be easily cured and should not result in a total disenfranchisement of the public’s right to vote for their designated candidates.
For the reasons stated, the court finds that the Board of Elections’ failure to provide petitioners with a three-day period to cure the deficiencies in their petition was affected by error of law and violated lawful procedure. The Board of Elections is directed to provide petitioners with the cure procedures provided in 9 NYCRR 6215.7.
ARE THE PETITIONERS ENTITLED TO AN OPPORTUNITY TO BALLOT?
The court’s decision to this point renders petitioners’ alternative request for relief moot. However, the court recognizes the *793 possibility of appellate review and the necessity of an expeditious resolution of all issues raised. Therefore, the following discussion seems appropriate.
In Matter of Harden v Board of Elections (74 NY2d 796), the Court of Appeals explained the opportunity to ballot remedy as follows: "The 'opportunity to ballot’ remedy fashioned in Matter of Hunting v Power (20 NY2d 680) was designed to give effect to the intention manifested by qualified party members to nominate some candidate, where that intention would otherwise be thwarted by the presence of technical, but fatal defects in designating petitions, leaving the political party without a designated candidate for a given office. It was not intended to be a generally available substitute for the petition process” (see, Matter of Harden v Board of Elections, 74 NY2d 796, 797).
The Court went on to say that "courts should invoke the Hunting remedy only where the defects which require invalidation of a designating petition are technical in nature and do not call into serious question the existence of adequate support among eligible voters” (supra; citations omitted).
In the instant case, the filed petitions clearly reflect the intention of the requisite number of qualified voters to designate the petitioners as their candidates for elective office. The respondents concede that there is no serious question concerning the existence of adequate support among eligible voters. In addition, without an opportunity to cure or opportunity to ballot, the Democratic Party will be left without any designated candidates for the various local offices.
Nonetheless, respondents contend that this court is without authority to direct an opportunity to ballot because the defect in the petition is "substantive” rather than "technical” (see, Matter of Harden v Board of Elections, supra). As previously stated, this court believes that such an interpretation of the relevant statutes and case law is inaccurate and would lead to an inequitable result. The court concludes that justice requires petitioners be afforded an opportunity to ballot.
The instant case is clearly distinguishable from the cases cited by respondents. In each of those cases, the defect requiring invalidation cast serious doubt as to whether sufficient numbers of eligible voters actually signed the petitions (see, Matter of Plunkett v Mahoney, 76 NY2d 848 — petitions void by reason of the failure to timely file a certificate of authorization; Matter of Van Stockum v Castine, 218 AD2d 915 — petitions void by reason of the failure to timely file certificate of
*794 authorization; Matter of Bee v Sabbeth, 207 AD2d 506 — petitions lacked requisite number of signatures of eligible voters; Matter of Proud v Relin, 176 AD2d 1197 — candidate selected to fill vacancy by the committee to fill vacancies rather than by designating petitions; also see, Matter of Harden v Board of Elections, supra — petitions lacked requisite number of signatures of eligible voters).
Thus, the court would be inclined to provide an opportunity to ballot if the petitioners were not otherwise entitled to the benefits of the three-day cure provision.
It is noteworthy that one of the additional benefits of the Ballot Access Law will be to largely obviate the need for a court-ordered opportunity to ballot. Neither remedy may be utilized to salvage a substantively defective petition which fails to establish the requisite intent of eligible voters to designate a candidate. Either may be used to avoid the harsh consequences that would result from technical but fatal defects in the petition process. The proper use of the three-day cure period will further the goal of eliminating costly and burdensome litigation commenced by political partisans solely for the purpose of gaining an unfair advantage over a political adversary.