496

[906 NYS2d 493]

In the Matter of GINA M. SINON, a Candidate Aggrieved, et al., Petitioners-Plaintiffs, v WESTCHESTER COUNTY BOARD OF ELECTIONS et al., Respondents-Defendants.

Supreme Court, Westchester County, August 6, 2010

APPEARANCES OF COUNSEL

*Guy T. Parisi*, Rye, for petitioners-plaintiffs. *Robert F. Meehan, County Attorney*, White Plains, for respondents-defendants. *Linda Trummer-Napolitano*, Armonk, objectant pro se.

## OPINION OF THE COURT

JOHN R. LaCava, J.

Petitioners-plaintiffs bring this CPLR article 78 proceeding/ Election Law article 16 declaratory judgment action (collectively referred to as the proceeding) seeking, among other things, an order restraining respondents-defendants from preventing petitioner Gina M. Sinon from appearing on the September 14, 2010 ballot as the candidate for the Republican Party primary dated September 14, 2010, for the position of Town Clerk (unexpired term) in and for the Town of North Castle, New York. The proceeding was prompted by the specifications of objections filed on July 22, 2010 by Linda Trummer-Napolitano (objectant), relating to her objections filed on July 16, 2010. These included 167 challenges to, inter alia, 140 signatures relating to several witness statements contained in petitioner's Republican Party designating petition for said position, and in addition 66 individual signatures in said petition. On July 27, 2010, a determination by respondent Westchester County Board of Elections (Board) struck 98 of the 223 signatures appearing in the petition. Petitioners subsequently commenced the instant proceeding by way of order to show cause allowed on July 28, 2010. The petition contained therein sets forth the ruling by the Board striking said signatures, and asserts, inter alia, that the signatures were collected properly, and that the Board incorrectly determined that 98 of the signatures were invalid. Respondents' answer includes the letter advising the objectant of the decision and the grounds therefor.

## The Hearing

The court conducted a hearing on August 4, 2010 in connection with this Election Law article 16/CPLR article 78 matter. In connection therewith, the following papers were considered:

1. Order to show cause, verified petition, signed July 28, 2010;

2. Verified answer from County Attorney with exhibit, dated August 2, 2010.

The parties placed into evidence, on consent, respondents' "A," petitioner's designating petition (consisting, inter alia, of a cover page and 16 signature pages); respondents' "B,"

the eight-page specification of objections; and respondents' "C," the Board determination. Petitioners called Concetta Magrone, who testified that she signed as attesting witness on designating petition sheet No. 5, contained in respondents' "A," and that she signed it in the presence of Anita Cozza after the list was full. However, while she did sign the sheet as subscribing witness, she did not have her glasses, and did not look at the date on the date line before signing.

Petitioners next called Anita Cozza, who testified that sheet No. 5 was one of the lists of names and signatures in petitioners' designating petition. She stated that she was present on June 18, 2010 when Magrone signed sheet No. 5, and personally, and erroneously, filled in the date of signature as "6/8/10" prior to Magrone signing the sheet. Further, she personally collected the signatures contained on sheet No. 8, and, also on June 18, 2010, signed sheet No. 8 after personally, and again erroneously, filling in the date of signature as "6/8/10." Despite the dating of sheet Nos. 5 and 8 as "6/8/10," Cozza stated that she was sure that the signatures were actually placed on those documents on June 18, and not June 8, because the sheets were turned in with other sheets, which were dated June 18; and because the sheets themselves all contain dates up to and including (but not after) June 18.

In addition, she also personally collected the signatures contained on sheet No. 7, and, on July 12, 2010, as she was preparing to sign sheet No. 7, she entered, on line 4 of the witness' attestation, the number corresponding to the number of signature lines filled on the page, which was 19. Immediately, however, she realized that the signature on line 16 of the sheet had already been stricken, leaving 18 signatures on the sheet and not the 19 she had just written. She then wrote over the 19, altering it to read 18 signatures, and then signed and dated this sheet, but did not sign and/or initial the change. Finally, she identified on sheet No. 14, line 15, the signature and place of residence of her own son, John M. Cozza. She testified that she was very familiar with her son's signature and knew the signature on line 15 to be that of her son, John.

Petitioners also called as a witness Deputy Board of Elections Commissioner Carolee Sunderland. Also introduced at this time, on consent, were respondents' "D," a request by Gina Sinon to the Board for voter registration cards, and its answer thereto; and respondents' "E," a supplemental request by Sinon for voter registration cards, and the Board's answer thereto. Dep-

uty Commissioner Sunderland testified regarding the following Board determinations and objections sustained relative to entries on several of the petition sheets:

Sheet No. 2, line 13—signature illegible, voter not enrolled Republican, voter not registered at this address.

Sheet No. 6, line 1—signature illegible, voter not enrolled Republican, voter not registered at this address.

Sheet No. 6, line 2—signature illegible, voter not enrolled Republican, voter not registered at this address.

Sheet No. 6, line 3—signature illegible, voter not enrolled Republican, voter not registered at this address.

Sheet No. 9, line 17—signature illegible, voter not enrolled Republican, voter not registered at this address.

Sheet No. 13, line 4—signature illegible, voter not enrolled Republican, voter not registered at this address.

Sheet No. 14, line 8—signature illegible, voter not enrolled Republican, voter not registered at this address.

Sheet No. 14, line 16—signature illegible, voter not enrolled Republican, voter not registered at this address.

Sunderland testified that, pursuant to requests by petitioner, two searches of the Board's records were made for voter registration cards relating to the above-mentioned sheet entries. The results of the searches were as follows:

Sheet No. 2, line 13—Tammy P. Kaiser, enrolled Republican, registered at the address listed on this line.

Sheet No. 6, line 1—Leonard J. DiBari, enrolled Republican, registered at the address listed on this line.

Sheet No. 6, line 2—Andrew J. Levy, enrolled Republican, registered at the address listed on this line.

Sheet No. 6, line 3—Maria R. Cannato, enrolled Republican, registered at the address listed on this line.

Sheet No. 9, line 17—James B. Boyle, enrolled Republican, registered at the address listed on this line.

Sheet No. 13, line 4—Michael Pinto, enrolled Republican, registered at the address listed on this line.

Sheet No. 14, line 8—Faith Lorenzo, enrolled Republican, registered at the address listed on this line.

Sheet No. 14, line 16—Frank J. Lattarulo, enrolled Republican, registered at the address listed on this line.

## The Board's Objections

The Board sustained the following objections as to petitioners' filed petitions:

| | |
|---|---:|
| Not Registered | 20 |
| Not Enrolled in the Republican Party | 10 |
| Residence Not in Political Subdivision | 1 |
| Name Printed, Not a Signature | 1 |
| Unidentifiable by Name/Address | 1 |
| Alteration Not Dated or Initialed | 2 |
| Statement of Witness Defective | 61 |
| Illegible Signature | 1 |
| Incomplete Address | 1 |
| Total Objections Sustained/Signatures Stricken | 98 |

The parties do not contest that the total number of signatures required for the public office at issue herein (Town Clerk) is 142 signatures. Of the 223 signatures filed, 98 have been stricken by the Board, leaving petitioner with 125 valid signatures, or 17 short of the required number.

## Summary of Board's Objections

### 1. Defective Witness Statement

The Board, inter alia, invalidated sheet No. 5 completely, due to the witness statement date of June 8, 2010 predating all 20 signatures on that page; sheet No. 7 completely, due to the uninitialed change, from 19 to 18, to the number of signatures in the witness statement; and sheet No. 8, lines 3 through 20 (18 signatures), due to the witness statement date of June 8, 2010 here, too, predating all 18 of the 20 signatures on that page.

### 2. Illegible Signatures

The Board, inter alia, also invalidated 37 additional individual signatures for various reasons, including illegibility.

## Statutory Requirements of Form for Designating Petitions

Election Law § 6-132 provides:

"§ 6-132. Designating petition; form

"1. Each sheet of a designating petition shall be signed in ink and shall contain the following information and shall be in substantially the following form:

"I, the undersigned, do hereby state that I am a

duly enrolled voter of the .................... party and entitled to vote at the next primary election of such party, to be held on ........., 20..........; that my place of residence is truly stated opposite my signature hereto, and I do hereby designate the following named person (or persons) as a candidate (or candidates) for the nomination of such party for public office or for election to a party position of such party.

| "Names of candidates | Public Office or party position | Place of residence (also post office address, if not identical) |
|---|---|---|
| ............. | ......................... | ......................... |
| ............. | ......................... | ......................... |

"I do hereby appoint ........................ (insert the names and addresses of at least three persons, all of whom shall be enrolled voters of said party) as a committee to fill vacancies in accordance with the provisions of the election law.

"In witness whereof, I have hereunto set my hand, the day and year placed opposite my signature.

| "Date | Name of Signer | Residence |
|---|---|---|
| ............ | ....................... | ................. |
| ............ | ....................... | ................. |

Town or city (except in the city of New York, the county)

...............................

...............................

"2. There shall be appended at the bottom of each sheet a signed statement of a witness who is a duly qualified voter of the state and an enrolled voter of the same political party as the voters qualified to sign the petition, and who is also a resident of the political subdivision in which the office or position is to be voted for. However, in the case of a petition for election to the party position of member of the county committee, residence in the same county

shall be sufficient. Such a statement shall be accepted for all purposes as the equivalent of an affidavit, and if it contains a material false statement, shall subject the person signing it to the same penalties as if he or she had been duly sworn. The form of such statement shall be substantially as follows:

### "STATEMENT OF WITNESS

"I, ..................... (name of witness) state: I am a duly qualified voter of the State of New York and am an enrolled voter of the ........................ party. I now reside at .................... (residence address).

"Each of the individuals whose names are subscribed to this petition sheet containing ................. (fill in number) signatures, subscribed the same in my presence on the dates above indicated and identified himself or herself to be the individual who signed this sheet.

"I understand that this statement will be accepted for all purposes as the equivalent of an affidavit and, if it contains a material false statement, shall subject me to the same penalties as if I had been duly sworn.

"Date: .....................            ......................................
                               Signature of Witness

"Witness identification information: The following information must be completed prior to filing with the board of elections in order for this petition sheet to be valid.

"Town or City            County

..............................      ..............................

"3. In lieu of the signed statement of a witness who is a duly qualified voter of the state qualified to sign the petition, the following statement signed by a notary public or commissioner of deeds shall be accepted:

"On the dates above indicated before me personally came each of the voters whose signatures appear on this petition sheet containing ............. (fill in number) signatures, who signed same in my pres-

ence and who, being by me duly sworn, each for himself or herself, said that the foregoing statement made and subscribed by him or her, was true.

"Date: ...................          ........................................
                                  (Signature and official title
                                  of officer administering oath)"

### Petitioners' Contentions

Petitioners, seeking to validate so much of the designating petition as has been invalidated by the Board, have the burden of proof to demonstrate that the Board's determination as relates to the stricken signatures is erroneous. As set forth above, petitioners narrowed the proof at the hearing to the following issues:

1. Sheet No. 5, dated "6/8/10," actually was signed on June 18, 2010, and thus the 20 signatures stricken for having been witnessed on June 8, 2010 (and prior to all 20 of the signatures thereon) should be validated.

2. Sheet No. 8, dated "6/8/10," actually was signed on June 18, 2010, and thus 18 of the 20 signatures stricken for having been witnessed on June 8, 2010 (and prior to all but two of the signatures thereon) should be validated.

3. Sheet No. 7 was originally recorded to contain 19 signatures. The subscribing witness, however, having realized that the sheet actually contains 18, and not 19, signatures (due to one signature having been crossed out), changed the "19" to "18," albeit without initialing and dating the change. This alteration was properly explained by the witness' testimony at the hearing, and thus the 18 signatures stricken for appearing on a sheet with an alteration not dated and initialed should be validated.

4. That eight signatures appearing on several pages, having been stricken as "signature illegible, voter not enrolled Republican, voter not registered at this address," are all legible signatures of registered Republican voters at their proper addresses, and thus those eight signatures should be validated.

### Improper Dating of the Witness Statement

As set forth above, the specifications sent to the Board by the objectant asserted that, inter alia, sheet No. 5 and sheet No. 8 were dated June 8, 2010, which is before 20 (on sheet No. 5) and 18 out of 20 (on sheet No. 8) of the signatures were

garnered. The Board upheld these two specifications, and invalidated sheet Nos. 5 and 8. Petitioners assert, in contrast, that sheet No. 5 and sheet No. 8, while dated "6/8/10," actually were signed by Concetta Magrone and Anita Cozza, the subscribing witnesses, on June 18, 2010.

The court has taken testimony from the subscribing witnesses of these sheets. The unequivocal testimony of Cozza is that, while the date is entered as "6/8/10," the actual date that the documents were signed was June 18, 2010. The court has also examined the sheets, and notes that each of them contain signatures acquired up to and including, but not after, June 18, 2010. The court finds both witnesses' testimony credible. Anita Cozza freely admits that she made a foolish error in dating the documents "6/8/10," but that it was, indeed, in the case of both documents, an error as to the date, and that her emphatic recollection is that the documents were attested to on June 18, 2010.

It has been held that the date on which the designating petition was attested to is a material element of the petition:

"The date of signature of the subscribing witness is a matter of statutorily prescribed content and is important because signatures taken after the date appearing on the witness statement are invalid. *See, e.g., Byrnes v. Board of Elections*, 134 NYS2d 257 (n.o.r.) (Sup. Ct. Nassau County 1954), *affirmed* 284 App. Div. 847 (2d Dept. 1954), *affirmed*, 307 NY 816 (1954); *Matter of Weiss v. Mahoney*, 49 AD2d 796 (4th Dept. 1975)." (*Matter of Henry v Trotto*, 20 Misc 3d 1134[A], 2008 NY Slip Op 51727[U], *18 [Sup Ct, Suffolk County 2008, Scheinkman, J.].)

Despite the credible testimony of Magrone and Cozza, however, the court is unaware, and has not been made aware by petitioners, of· any authority for acceptance of testimony which in effect alters the date of sheet Nos. 5 and 8 from "6/8/10" to June 18, 2010. (*See Matter of Verity v Cristenfeld*, 70 Misc 2d 310 [Sup Ct, Nassau County 1972], citing *Matter of Carson v Lomenzo*, 18 NY2d 263 [1966]; *but see Carpenter v Eagleton*, 24 Misc 3d 1232[A], 2009 NY Slip Op 51708[U] [Sup Ct, Dutchess County 2009].) Indeed, *Byrnes* (*supra*) would seem to preclude such a finding. That case involved the failure of a party to set forth a date in a witness statement; the court declined to permit the petitioner to supply the missing date by affidavit of the notary public in the course of a validating petition proceeding, citing with approval to *Volk v Clayton* (134 NYS2d 648, 649 [Sup Ct, Suffolk County 1952]), which stated:

"The moving party concedes that the date in the jurat is missing. He seeks to correct this fatal defect by submitting the affidavit of the notary public upon this motion.

"The time to amend the petition expired on March 18, 1952. No evidence upon which the Board of Elections might have given consideration to what petitioner contends was an oversight, was submitted to it.

"This supplemental or correcting affidavit cannot be considered by the Court. Application of Johnson, 258 App.Div. 746, 15 N.Y.S.2d 717; Application of Rosenburg, N.Y.L.J. March 20, 1936.

"The Board of Elections acted within the scope of its authority in rejecting the petition.

"Accordingly, this motion is denied."

Petitioner has argued, however, that the court should grant a liberal construction to the formal requirements of the Election Law, to insure that the will of the voter is heard. (*Cf. Matter of Cozzolino v Columbia County Bd. of Elections*, 218 AD2d 921, 922-923 [3d Dept 1995] ["The Election Reform Act of 1992 (L 1992, ch 79) was enacted in response to the 'hypertechnical intricacy' of New York's Election Law, which 'sets traps for the unwary to protect the incumbent' (Governor's Mem, 1992 McKinney's Session Laws of NY, at 2877). As a result of the Act, technical requirements as to the form of a petition have been eased (*see*, L 1992, ch 79, §§ 10, 11, 12, 13, 14), and '(h)armless mistakes on the petition forms will no longer have to mean the end of a campaign' (Governor's Mem, 1992 McKinney's Session Laws of NY, at 2877)"].) Nevertheless, in the absence of clear authority, the court is constrained to find that the failure to properly date sheet Nos. 5 and 8 is fatal to the 20 signatures on sheet No. 5, since all 20 postdated June 8, 2010, and fatal to all but the first two signatures on page eight, those of Sharon Tomback and James E. Romano, for the same reason. The court therefore validates the signatures of Tomback and Romano, lines 1 and 2 on sheet No. 8.

### Uninitialed Alterations in the Witness Statement

As also set forth above, the specifications sent to the Board by the objectant asserted that, inter alia, sheet No. 7 contains an uninitialed change to the number of signatures contained in the witness statement. The Board upheld this specification, and invalidated sheet No. 7. Petitioners assert that, in executing the

witness portion of sheet No. 7, Anita Cozza looked at the number of lines filled out on the page (19), and entered that number on the line requiring the number of signatures. As soon as she did so, however, she realized that the signature on line 16 had been stricken, so she immediately wrote over the number 19, changing it to read 18, albeit without initialing the change.

Alterations to a witness statement which lack the initials of the subscriber are viewed with great concern. As the Court stated in *Matter of Jonas v Velez* (65 NY2d 954, 955 [1985]):

> "Essential to the integrity of the petition process is the subscribing witness's statement authorized by Election Law § 6-132 and particularly that portion of it which contains the total number of signatures on the petition sheet to which it is appended. We have, therefore, consistently held that alteration of the statement which is unexplained and uninitialed will result in the invalidation of the petition sheet (*Matter of Sheldon v Sperber*, 45 NY2d 788; *Matter of Klemann v Acito*, 45 NY2d 796, *affg* 64 AD2d 952; *Matter of Nobles v Grant*, 41 NY2d 1048, *affg* 57 AD2d 600). The fact that the alterations here resulted in the manifestation of correct information, or that the numbers inserted were smaller, rather than larger, as in *Matter of Berger v Acito* (64 AD2d 949, *lv denied* 45 NY2d 707), does not remedy the legal deficiency (*see, Matter of White v McNab*, 40 NY2d 912, 913)."

Nevertheless, and despite the absence of a prior explanation or an initialing of the change, where an explanation for the alteration is provided at the hearing on the matter, the witness' subscribing statement, and the page of the petition, may be upheld. (*See Matter of Rosmarin v Belcastro*, 44 AD3d 1055 [2d Dept 2007]; *Matter of Curley v Zacek*, 22 AD3d 954 [3d Dept 2005]; *Matter of Keal v Board of Elections of State of N.Y.*, 164 AD2d 962 [3d Dept 1990]; *Matter of Gartner v Salerno*, 74 AD2d 958 [3d Dept 1980].) Strict compliance with technical requirements of designating petitions in Election Law § 6-134 does not preclude application of the de minimis doctrine to minor inaccuracies in the numerical statement contained in the cover sheet. (*See Matter of Staber v Fidler*, 110 AD2d 38 [2d Dept 1985] [where overstatements or understatements in total number of signatures reported on cover sheet of a designating petition are de minimis, strict compliance rule is satisfied and thus, special term incorrectly invalidated designating petitions].)

Here, the court credits the uncontroverted testimony of Cozza that, as she was signing as witness, she merely looked at the last line of signatures, saw that it was 19, and inadvertently recorded that as the number of signatures on the sheet; that she then realized that number 16 had already been stricken, leaving only 18 signatures; and that thereupon she altered her previously-written 19 to read 18. Cozza's changing of the number of signatures to reflect the actual number contained on the petition page without initialing the correction was innocent and de minimis. Having provided a reasonable explanation for the alteration on sheet No. 7, the petition is sustained in that respect and the 18 signatures on sheet No. 7 are validated.

## Line-by-Line Review and Findings by Court

Sheet No. 2, line 13—signature illegible; while first initial is cursive, the signature appears to be the initials "TM." The court cannot relate the signature to the signature card of any registered voter at the instant address, and no witness was produced to validate the authorship of the signature.

Sheet No. 6, line 1—signature illegible; while it appears to be cursive initials, the court cannot relate the signature to the signature card of any registered voter at the instant address, and no witness was produced to validate the authorship of the signature.

Sheet No. 6, line 2—signature illegible; while it appears to be cursive initials, the court cannot relate the signature to the signature card of any registered voter at the instant address, and no witness was produced to validate the authorship of the signature.

Sheet No. 6, line 3—signature illegible; while signature appears cursive, the court cannot relate the signature to the signature card of any registered voter at the instant address, and no witness was produced to validate the authorship of the signature.

Sheet No. 9, line 17—signature illegible; while center letter is cursive, and appears to be a "B," the court cannot relate the signature to the signature card of any registered voter at the instant address, and no witness was produced to validate the authorship of the signature.

Sheet No. 13, line 4—signature illegible; while first initial is cursive and appears to be an "M," the court cannot relate the signature to the signature card of any registered voter at the instant address, and no witness was produced to validate the authorship of the signature.

Sheet No. 14, line 8—signature legible, and determined to be that of Faith Lorenzo, the registered Republican voter at the instant address.

Sheet No. 14, line 15—Anita Cozza unequivocally identified this signature to be that of her son, John M. Cozza, a registered Republican residing at the address listed in the petition.

Sheet No. 14, line 16—signature legible, and determined to be that of Frank J. Lattarullo, the registered Republican voter at the instant address.

## Court Determination

The court sustains the validation petition to the extent that it validates the 18 signatures on sheet No. 7, as set forth above, and in addition three individual signatures invalidated for illegibility, as also set forth above. The reduction in the number of signatures invalidated by the Board (98) by these 21 signatures, leaves petitioner with 146 signatures, four more than the 142 signatures required.

Based upon the foregoing, it is hereby ordered that the verified petition of petitioners Gina M. Sinon, Loronda Murphy, and Ralph Amelio to validate the designating petition designating Gina M. Sinon as candidate for the public office of Town Clerk (unexpired term) in and for the Town of New Castle, New York at the Republican Party primary election to be held on September 14, 2010, is granted; and it is ordered that the designating petition filed with the Westchester County Board of Elections designating Gina M. Sinon as candidate for the public office of Town Clerk (unexpired term) in and for the Town of North Castle, New York, at the Republican Party primary election to be held on September 14, 2010, is declared to contain the required number of valid signatures and is therefore valid; and it is further ordered that the Westchester County Board of Elections is directed to print and place the name of Gina M. Sinon as candidate for the public office of Town Clerk (unexpired term) in and for the Town of North Castle, New York, on the official ballots to be used in the Republican Party primary election to be held on September 14, 2010.